UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARRIVALSTAR S.A. and MELVINO TECHNOLOGIES LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No.:10-CV-10456 |
| v. | ) ) | |
| MASSACHUSETTS BAY TRANSPORTATION AUTHORITY | ) ) ) | |
| Defendant. | ) | |

**MASSACHUSETTS BAY TRANSPORTATION AUTHORITY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE
AMENDED COMPLAINT**

This lawsuit offends any notion of justice.  The mission of Defendant

Massachusetts Bay Transportation Authority ("MBTA") is to transport its 1.1 million

riders safely and on time every day.  As a service to the riding public, the MBTA alerts

riders via its website, text message or email whether one of its vehicles is running late or

has otherwise encountered some difficulty or delay.  Though the MBTA is a cash-

strapped public entity, its notification service is free of charge to anyone who wishes to

subscribe.  The MBTA makes no money from this service.  The service provides a

benefit to the riding public, by whom it has been well received.

Plaintiffs ArrivalStar S.A. and Melvino Technologies Limited (collectively, "Plaintiffs" or "Arrivalstar"), two offshore companies, allege, in a conclusory and unspecified manner, that the technology underpinning the MBTA's alert system infringes on two patents that they claim to own.  Plaintiffs do not allege they produce or manufacture anything.  They do not allege they sell anything.  The primary, if not sole, purpose of Arrivalstar is to exact tribute from any person that Arrivalstar asserts is using inventions claimed in patents that they purport to own, either in the form of royalties or a strike suit such as this one.  The Court may take notice of the fifteen suits Plaintiffs, or a related entity, have brought in federal district courts involving the same two patents at issue in this dispute.  See, e.g., Edward v. John Hancock Mutual Life Ins. Co., 973 F.2d 1027, 1030 n.1 (1st Cir. 1992)(court may take judicial notice of public documents on file with judiciary in considering a Rule 12(b)(6) motion); Thornton v. Sabol, 620 F.Supp.2d 203, 204 n.1 (D. Mass. 2009)(taking judicial notice of docket sheet in ruling on motion to dismiss)(citation omitted).  See also United States District Court, ECF Electronic Dockets, attached hereto as Exhibit A.  Not surprisingly, in none of these parallel cases have Plaintiffs seen fit to press their claims to final adjudication; otherwise the defenses of issue and claim preclusion might be available to the MBTA to nip this suit in the bud.

In any event, the practice of monetizing patents through serial litigation by "non-practicing entities" or "NPEs," as they are euphemistically known, is unseemly and inimical to the fundamental purpose of United States patent laws of encouraging innovation and its introduction into the economy.  The business model of Plaintiffs is no less obvious than the patents themselves, and shakedowns such as this one should be outlawed.

Fortunately for the MBTA and the citizens of the Commonwealth of Massachusetts, the law already provides a mechanism for early screening of inherently defective complaints, as is the Amended Complaint filed in this action.  The Amended Complaint is fundamentally and fatally flawed and should be dismissed for at least the following reasons:

- The boilerplate, ambiguous character of the Amended Complaint fails to withstand Rule 12(b)(6) scrutiny under recent Supreme Court precedents Bell Atlantic v. Twombly, 550 U.S. 554 (2007) and Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937 (2009).
- The patents at issue are business methods patents, invalid under In re Bilski, 545 F.3d 943 (Fed. Cir. 2008)(en banc).

As set forth in detail below, the Amended Complaint fails to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2) and is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## **PROCEDURAL HISTORY**

On March 17, 2010, Arrivalstar commenced this action by filing its Complaint. On April 27, 2010, the MBTA moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  On May 7, 2010, Arrivalstar filed and served an Amended Complaint as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(B).

The  sole substantive difference between the Complaint and Amended Complaint is Arrivalstar's deletion of the allegation of contributory infringement and inducement to infringement by the MBTA.  Paragraph 8 of the Complaint stated, "The MBTA has also infringed … by knowingly inducing and by contributing to the infringement by others of, [sic] such patents."  The Amended Complaint no longer contains this allegation. Attached hereto as Exhibit B is a blacklined version of the Amended Complaint reflecting the deletion of the indirect infringement allegation at paragraph 8.

First, however, the MBTA was compelled to incur the time and expense of refuting Arrivalstar's allegation of indirect infringement in its original motion to dismiss. The inclusion of the indirect infringement allegation in the Complaint is potentially sanctionable and suggests Arrivalstar's failure to investigate adequately the MBTA's notification system prior to commencing this ill-conceived lawsuit.  Nevertheless, in light of the amendment, the MBTA has removed the sections addressing Arrivalstar's indirect infringement claims from its original memorandum of law in support of its motion to dismiss.  Otherwise this memorandum of law is virtually identical to the original one, except for the inclusion of this procedural history section.

## STATEMENT OF FACTS

The allegations in the Amended Complaint, which may be assumed to be true for purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), are summarized as follows:

ArrivalStar S.A. is a Luxembourg company that owns United States Patent No. 6,317,060 (the "'060 patent"), "Base system and method for monitoring travel of mobile vehicle and communicating notification messages," issued November 13, 2001. Amended Complaint ("Compl.") ¶¶ 2, 4.  Melvino Technologies is a British Virgin Islands company that owns United States Patent No. 7,030,781 (the "'781 patent"), "Notification system and method that informs a party of vehicle delay," issued April 18, 2006. Compl. ¶¶ 3, 5.  The MBTA is an entity created by the Legislature of the Commonwealth of Massachusetts pursuant to Massachusetts General Laws Chapter 161A.  Compl. ¶ 6.

The T-Alerts system receives data, including schedule and line/route information for MBTA buses, boats and trains, monitoring the location of these vehicles.  Compl. ¶¶

9-12.  The T-Alerts system allows users to receive notifications regarding MBTA

vehicles at such times as users elect, including notifications regarding whether an MBTA

vehicle is delayed, delayed more than 15 minutes, or will miss a scheduled stop.  Compl.

¶¶ 13, 16-18.  Such information may be updated.  Compl. ¶ 19.  The T-Alerts system

transmits such notifications via users' computers, phones, pagers, email and SMS text

message.  Compl. ¶¶ 21, 23.

## ARGUMENT

I.      The Amended Complaint Fails To State A Claim Upon Which Relief Can
        Be Granted And Should Be Dismissed Under Federal Rule Of Civil
        Procedure 12(b)(6)

        A.      Plaintiffs' Pleading Burden Under Twombly And Iqbal

To survive a motion to dismiss, a complaint must allege facts in support of each

element of the claims asserted – "[t]hreadbare recitals…do not suffice."  Ashcroft v.

Iqbal, 550 U.S. ---, 129 S.Ct. 1937, 1949 (2009)(citing Bell Atl. Corp. v. Twombly, 550

U.S. 544, 557 (2007)).  A complaint must contain sufficient factual matter to state a claim

that is plausible on its face.  "Where a complaint pleads facts that are 'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility

of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

While it remains true that in evaluating a Rule 12(b)(6) motion, the Court is to

"accept as true the well-pleaded factual allegations of the complaint, draw all reasonable

inferences in the plaintiff's favor, and determine whether the complaint, so read, sets forth

facts sufficient to justify recovery on any cognizable theory," TAG/ICIB Servs., Inc. v.

Pan American Grain Co., Inc., 215 F.3d 172, 175 (1st Cir. 2000), the Twombly court held

that a plaintiff must plead "more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555.  In

other words, there must be sufficient facts alleged in the complaint to raise the right to

relief beyond mere speculation and into the realm of the plausible.  Id. (citing 5 C.

WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 235-236 (3d

ed. 2004)).

The Supreme Court further elaborated the plausibility pleading standard in Iqbal.

The Iqbal court noted that Twombly requires a plaintiff to satisfy two requirements.

First, a complaint must contain more than "an unadorned, the-defendant-unlawfully-

harmed-me accusation."  Iqbal, 129 S.Ct. at 1949.  Consequently, a complaint does not

"suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id.

(quoting Twombly, 550 U.S. at 557).  Restating its earlier rejection of the standard of

Conley v. Gibson, 335 U.S. 41 (1957)(dismissal appropriate only where it is beyond

doubt that a plaintiff could prove "no set of facts" that would result in relief), the Iqbal

court declared that, while "Rule 8 marks a notable and generous departure from the

hyper-technical, code-pleading regime of a prior era,…it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."  Id. at 1950.

Instead, a plaintiff must plead sufficient "*factual content* that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949

(emphasis added).  Courts, therefore, are obliged to discount conclusory allegations and

bald assertions.  Id. at 1951 ("conclusory" allegations are "disentitle[d]…to the

presumption of truth"); Abbott v. United States, 144 F.3d 1, 2 (1st Cir. 1998)(while court

should take well-pleaded factual allegations as true, it "need not credit the complaint's

bald assertions or legal conclusions")(internal quotations omitted).

The second requirement of the <u>Twombly</u> standard is that a plaintiff's factual assertions must "possess enough heft" to fall plausibly within an entitlement to relief. <u>Iqbal</u>, 129 S.Ct. at 1950; <u>Twombly</u>, 550 U.S. at 557.  Plausibility in this sense demands a "showing," meaning the presentation of facts that are something more than merely "consistent with" a defendant being liable to the plaintiff.  <u>Id.</u> at 555 n.3, 557.  This inquiry requires courts to draw on their experience and common sense <u>in considering contextually</u> whether a complaint states a plausible claim for relief.  <u>Iqbal</u>, 129 S.Ct. at 1950.[1]

As set forth below, the Amended Complaint does not meet the pleading requirements articulated in <u>Twombly</u> and <u>Iqbal</u>, and thus fails to state a claim upon which relief can be granted.  Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), the Amended Complaint must be dismissed.

> B.    Plaintiffs Fail To Plead Direct Infringement

The Amended Complaint sets out allegations of infringement in two separate, yet wholly conclusory paragraphs:

> The MBTA transacts business and has, at a minimum, offered to provide and/or provided in this judicial district and throughout the State [sic] of Massachusetts services that infringe claims of the '060 and '781 patents.  Compl. ¶ 6.

> Defendant MBTA has infringed claims of the '060 and '781 patents through, among other activities, the use of MBTA's T-Alerts vehicle tracking system.  Compl. ¶ 8.

---

[1] By way of example, in <u>Bender v. LG Electronics U.S.A., Inc.</u>, No. 09-02114, 2010 WL 889541, at *3 (N.D. Cal. March 11, 2010), the California federal district court, applying <u>Twombly</u> and <u>Iqbal</u> in dismissing the complaint, considered the fact that the plaintiff, an NPE, had filed numerous other lawsuits with similar allegations in dismissing the plaintiff's patent infringement complaint.  This Court should likewise consider Plaintiffs' numerous other lawsuits involving the same patents -- which were either disposed of in relatively short order or are pending -- in evaluating the similarly conclusory allegations and baseless claims presented in the Complaint.

From these two bare assertions, and having belatedly removed its baseless allegation of indirect infringement, Plaintiffs maintain a single theory of direct patent infringement. The Amended Complaint fails to state a claim for relief under this theory.

The Amended Complaint fails to state a claim for direct infringement of a patent because it is inherently conclusory, vague and ambiguous.  Plaintiffs' most concrete statement of its theory of direct infringement boils down to a single conclusory allegation: "Defendant MBTA has infringed claims of the '060 and '781 patents through … the use of MBTA's T-Alerts vehicle tracking system."  Compl. ¶ 8.[2]  The other putatively operative paragraphs 9-23 make what appear to be factual allegations regarding the operation of the T-Alerts vehicle tracking system.  Most of these allegations are essentially transmogrified from the language of the patents themselves.[3]

What may appear at first blush to constitute factual allegations is a mere façade. The chart below provides examples of the Plaintiffs' converting the language in the patents into "allegations" in the section of the Amended Complaint entitled "Defendant MBTA's Acts of Direct Infringement:"

---

[2] The allegation of infringement contained in paragraph 6 is even more vague and abstract than that of paragraph 8.

[3] The Court may consider both the '060 and '781 patents without converting this motion to one for summary judgment because those documents are attached to the Complaint.  Documents attached to a complaint are properly considered part of the pleading "for all purposes" including Rule 12(b)(6).  See Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008)("[W]hen … a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."); see also Fatell v. Title Guarantee Co., Civil No. 08-cv-02521-PAB-KLM, 2009 WL 3158166, at *1 (D. Colo. Sept. 24, 2009)(patent attached to plaintiff's response to defendant's motion to dismiss proper to consider under Rule 12(b)(6) because central to plaintiff's claims).

| Complaint Paragraph | Patent |
|---|---|
| 10. The MBTA system monitors the location of vehicles. | '781 Patent - Claim 2:  "A system [for] monitoring travel data associated with a vehicle." |
| 16. The MBTA T-Alert system monitors train movement relative to a planned schedule and transmits alert notifications if the train is delayed more than 15 minutes.<br><br>17. The MBTA T-Alert system is configured to notify users if a train, traveling a planned route, is delayed.<br><br>18. The MBTA T-Alert system is configured to notify users if a train will not arrive at a scheduled stop by a scheduled time. | '781 Patent – Claim 14:  "A method…of informing the user of the vehicle delay with respect to the vehicle stop and of updated impending arrival of the vehicle at the vehicle stop…."<br><br>'060 Abstract – "A vehicle monitoring and notification system includes a route handler, a schedule monitor, and a communication handler…. If any of the vehicles are off schedule, the route handler updates the data monitored by the schedule monitor to change when the schedule monitor determines that notification messages should be received by the users.  Once the schedule monitor determines that a user should receive a notification message, the schedule transmits a notification request to the communication handler.  The communication handler then establishes communication with a communication device associated with the user and transmits a notification message to the user." |
| 21. The MBTA T-Alert system transmits T-Alert notifications to users' computers, phones and pagers.<br><br>22. The MBTA T-alert system is configured to simultaneously transmit T-Alert notifications to users' computers, phones, and pagers.<br><br>23. The MBTA T-Alert system is configured to transmit a T-Alert notification to a user via both email and SMS text message. | '781 Patent – Claim 2: "A system, comprising…means for contacting a user communications device before the vehicle reaches a vehicle stop along the route…."<br><br>'060 Patent – Claim 20: "A method for notifying users of impending arrivals of vehicles at particular locations, comprising the steps of…determining when to notify a user of an impending arrival of said one vehicle at a particular location…, transmitting a notification request…, and allocating said notification request to a communication handler…."<br><br>'060 Patent – Claim 22: "A method of claim 20, further comprising the steps of…transmitting a notification message from said other communication handler…indicating said impending arrival of said one vehicles." |

These allegations, which are the language of the patents in thin disguise, lack any other basis and seek to create an illusion of factual support for Plaintiffs' direct infringement claim.  They are conclusory and, under <u>Twombly</u> and <u>Iqbal</u>, should be discounted.

Even if these "factual" allegations were not mere reconstructions of the patents, it is impossible to tell how any of them represent examples of infringement or how they relate to the patents at issue.  None of the allegations in paragraphs 9-23 delineate how the MBTA's actions constitute direct infringement.  The Amended Complaint fails to identify whether and which features of the T-Alerts vehicle tracking system infringe the '060 and '781 patents individually or whether direct patent infringement arises somehow only when both patents are considered together.  Instead, the Amended Complaint merely identifies two patents, makes conclusory allegations of infringement, tacks on a set of cursory, "factual" assertions that track the language of the patents, and asserts "my patents have been infringed."  Because of its ambiguity and irredeemably conclusory nature, the Amended Complaint fails to provide sufficient factual content to satisfy the plausibility standard enunciated in Iqbal and Twombly.  See Bender v. LG Electronics U.S.A., Inc., No. 09-02114, 2010 WL 889541, at *6 (N.D. Cal. March 11, 2010)(dismissing patent infringement complaint because it did no "more than allege conclusorily the means by which Defendants are infringing…[and] of the specific infringements alleged."); West Penn Allegheny Health Sys. v. UPMC, No. 09cv0480, 2009 WL 3601600, at *20 (W.D. Pa. Oct. 29, 2009)(finding that where "[p]laintiff concocts a story from incomplete and ambiguous information and…applies speculative thinking and draws conclusory inferences, all the while ignoring equally plausible contrary inferences and any facts that derail its theory," Twombly and Iqbal analysis requires that plaintiff's claims be dismissed).

Finally, and importantly, under Twombly and Iqbal, the Court, relying on its common sense and experience, may take into consideration the propriety and practice of

Plaintiffs' myriad other strike suits involving the same patents (most of which were disposed of quickly, none of which have proceeded to trial) and Plaintiffs' status as an NPE in evaluating the conclusory allegations and baseless claims presented in the Complaint.  Bender, 2010 WL 889541 at *3 (considering NPE plaintiff's numerous other lawsuits presenting similar allegations in dismissing patent infringement complaint).

Accordingly, the Amended Complaint fails to state a claim for direct infringement and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    The Patents In Suit Do Not Meet The Machine-or-Transformation Test Of Bilski And Therefore Are Not Patentable Subject Matter Under 35 U.S.C. § 101

Whether a patent claim is drawn to patent-eligible subject matter is a threshold inquiry under 35 U.S.C. § 101, and any claim of an application which fails this statutory requirement must be rejected even if it meets all of the other legal requirements of patentability.  Parker v. Flook, 437 U.S. 584, 594 (1978).  Section 101 states:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101.  As set forth in Section 101, patent-eligible subject matter is confined to four categories: (1) processes; (2) machines; (3) manufactures; and (4) compositions of matter.

On October 30, 2008, the Federal Circuit issued its en banc decision in In re Bilski, 545 F.3d 943 (Fed. Cir. 2008), cert. granted, (U.S. June 1, 2009)(No. 08-964)("Bilski").  In Bilski, the Federal Circuit clarified that the "machine-or-transformation" test applied to determine the subject matter eligibility of a "process"

patent.[4]   The <u>Bilski</u> court explained that a process is patentable only if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing."   <u>Id.</u> at 954.   Whether a process is tied to a particular machine is determined by examining whether "the use of a specific machine impose[s] meaningful limits on the claim's scope" and whether "the involvement of the machine in the claimed process [is] merely extra-solution activity."   <u>Id.</u> at 961-62.   Since the applicants in <u>Bilski</u> admitted that their claims did "not limit any process to any specific machine or apparatus," the court held that the claims did not meet the machine prong of the machine-or-transformation test.   <u>Id.</u> at 962.   The <u>Bilski</u> Court also went on to hold that the claims did not meet the transformation prong.   <u>Id.</u> at 963-966.   The claims were found entirely invalid under Section 101.

More recent cases have elaborated on the degree to which a claim must be tied to a specific machine, more specifically the degree to which the claim must be tied to a computer, in order to satisfy the machine prong of the <u>Bilski</u> test.   These cases hold that where the applicant admits, either in the specifications, claims or court papers, that recited method "need not be performed on a computer" the patent is invalid.   <u>See</u>, <u>e.g.</u>, <u>Fort Properties, Inc. v. American Master Lease, LLC</u>, 609 F. Supp. 2d 1052, 1055 (C.D. Cal. Jan. 22, 2009).   Likewise, even if the claim recites use of a computer, but could be performed without one, then the claim is not tied to a particular machine and is not patentable.   <u>Research Corporation Technologies, Inc. v. Microsoft Corp.</u>, No. CV-01-658-TUC-RCJ, 2009 WL 2413623, at *12 (D. Ariz. July 28, 2009)(claim reciting use of a computer for simulating a continuous tone image by using a pixel-by-pixel comparison of

---

[4] A process claim is drawn to "an act, or a series of acts...." <u>In re Nuijten</u>, 500 F.3d 1346, 1355 (Fed. Cir. 2007).

the image against a particular property "does not require a machine; instead it could have been done on a sheet of paper using a pen").

Moreover, even where a claim may need to be performed on a computer, claims reciting use of general purpose computers do not satisfy the test.  Ex Parte Myr, No. 2009-005949, 2009 WL 3006497, at *8-9 (Bd. Pat. App. & Interf. Sept. 18, 2009)("computer-implemented" process for valuing real estate was not tied "to any particular computer" and therefore was not patentable under Section 101); Ex Parte Nawathe and Angal, No. 2007-3360, 2009 WL 327520, at *4 (Bd. Pat. App. & Interf. Feb. 9, 2009)("We note that the recited method, while being computerized, is not tied to a particular machine for executing the claimed steps.  We find that the computerized recitation purports to a general purpose processor..., as opposed to particular computer specially programmed for executing the steps of the claimed method."); Ex Parte Gutta, No. 2008-3000, 2009 WL 112393 (Bd. Pat. App. & Interf. Jan. 15, 2009)(rejecting under Section 101 a claim reciting "a computerized method performed by a data processor").

In addition, claims generally referring to a computer that performs a variety of functions do not "require the use of a 'particular machine' and the patent is thus invalid under Bilski."  Dealertrack v. Huber, 657 F.Supp.2d 1152, 1155 (C.D. Cal. July 7, 2009) (claims tied to a "central processor 'consisting of a specially programmed computer hardware and database,' a 'remote entry and display device,' and a 'remote funding source terminal device'" did not specify how the computer hardware and databases are "specially programmed"); Ex Parte Cornea-Hasegan, No. 2008-4742, 2009 WL 86725, at *5 (Bd. Pat. App. & Interf. Jan. 13, 2009)(rejecting under Section 101 a claimed method for predicting results of mathematical operations, finding that "[r]ecitation of a

'processor' performing various functions is nothing more than a general purpose computer that has been programmed in an unspecified manner to implement the functional steps recited in the claims").

Likewise, claims generally referring to a variety of computers to perform a variety of functions do not require the use of a particular machine and are not patentable. Accenture Global Services GMBH v. Guidewire Software Inc., No. 07-826-SLR, 2010 U.S. Dist Lexis 2009, at *57 (D. Del. Mar. 5, 2010)(recitation of software run on computers generating file notes in connection with insurance claims which could be performed not only on a "personal computer," but also "other computer systems such as a network computers, workstations, and mainframe computers"); Cybersource Corp. v. Retail Decisions, Inc., 620 F.Supp.2d 1068, 1077 (N.D. Cal. Mar. 26, 2009)(recitation of fraud detection "over the Internet" did not require the use of a particular machine since the Internet "is a network of millions of individual machines.").

Finally, claims referring to "computer storage" or "memory" do not state a tie to particular computer and are not patentable.  See, e.g., Fuzzysharp Technologies Inc. v. 3d Labs Inc., Ltd., No. C 07-5948 SBA, 2009 U.S. Dist. Lexis 115493, at *12 (N.D. Cal. Dec. 11, 2009)("computer storage"); Accenture Global Services GMBH v. Guidewire Software Inc., 2010 U.S. Dist Lexis 2009, at *57 (D. Del. Mar. 5, 2010)("memory, secondary storage device"); Ex Parte Mitchell and Sevitsky, No. 2008-2012, 2009 WL 460662, at *6 (Bd. Pat. App. & Interf. Feb. 23, 2009)("[T]he use of...'memory' is insufficient to render an otherwise ineligible claim patent eligible.")

The processes claimed by both the patents in suit, namely '781 and '060, do not meet the requirements for patentable subject matter set forth in Bilski.  The '781 patent is

an advance notification system that notifies passengers of an impending arrival of a

transportation vehicle at a particular stop.  The system includes an onboard vehicle

control unit (VCU) for each vehicle and a base station control unit (BSCU) for making

telephone calls to passengers in order to inform the passengers when the vehicle is a

certain predefined time period and/or distance away from the vehicle stop.  As stated in

the specifications for the '781 patent, at 10:30:

> Furthermore, it should be noted that the base station control process of
> FIG. 6 and telephone control process of FIG. 7 are both implemented via
> software stored within memory and are both run by the microprocessor
> controller.  However, these control operations need not be implemented in
> software and could be implemented perhaps in hardware or even manually
> by human interaction.

Additionally, the specifications at 6:15 state that "[t]he BCSU can be implemented by

any conventional computer with suitable processing capabilities."[5]

The principal claims under '781 generally do not even specify any computer, let

alone a particular computer.  Claim 1 is a method claim, as follows:

> 1.  A method, comprising the steps of monitoring travel data associated
> with the vehicle; comparing planned data timing of the vehicle along a
> route to updated vehicle status information; contacting a user
> communication device before the vehicle reaches a vehicle stop along the
> route; and informing the user of the vehicle delay with respect to the
> vehicle stop and of updated impending arrival of the vehicle at the vehicle
> stop, based upon the updated vehicle status information and the planned
> timing.

Claims 8 and 14, both dependent claims, do recite the use of computers, but not

any particular computers:

> 8.  The method of claim 1, wherein the method is performed by a
> computer system that is a single computer or that comprises a distributed

---

[5] The specification is "usually...dispositive" as to claim construction analysis.  <u>Vidtronics Corp. v. Conceptronic, Inc.</u>, 90 F. 3d 1576, 1582 (Fed. Cir. 1996).

architecture with a plurality of computers that are communicatively
coupled.

14. The system of claim 2, wherein the system is a single computer system or
comprises a distributed architecture with a plurality of computers that are
communicatively coupled.[6]

The process claimed by the '060 patent is also not patent-eligible under Section

101.  The '060 patent, as stated in the abstract, is for a vehicle monitoring and

notification system that includes a route handler, a schedule monitor, and a

communication handler. The schedule monitor determines when users should receive

notification messages based on data that indicate when vehicles are expected to arrive at

certain locations.  The route handler communicates with vehicle control units on board

vehicles to determine whether and how much any of the vehicles are off schedule.  The

communication handler then establishes communication with a communication device

associated with the user and transmits a notification message to the user.

The specifications for the '060 patent at 1:55 describe the patent as "provid[ing]

an automated computer-based apparatus and method for monitoring travel of vehicles and

for effectively communicating notification messages to warn users of impending arrivals

of the vehicles."  The vehicle tracking system, at 3:29, "is preferably employed within the

context of an automated advance notification system that automatically provides advance

notice of impending arrivals of vehicles at destinations or other locations."  The vehicle

manager, at 4:20, "can be implemented in software, hardware, or a combination thereof.

Preferably, as illustrated by way of example in FIG. 3, the vehicle manager of the present

---

[6] A recitation of a system claim, which is essentially a claim of a patent-eligible machine, does not become a patent-eligible machine claim merely because the applicant says it is a machine.  Every Penny Counts, Inc. v. Bank of America Corporation, No. 2:07-cv-042, 2009 U.S. Dist. Lexis 53626, at *5-6 (M.D. Fla. May 27, 2009)("Simply because the process at issue requires machines or computers to work, however, does not mean that the process or system is a machine. . . . The 'system' described by the 191 patent 'has no substantial practical application except in connection with' computers, cash registers, and networks, but it is not comprised of those devices.  The 191 patent is a process, not a machine.").

invention along with its associated methodology is implemented in software and stored in computer memory of a computer system." Last, the communication handler, at 9:35, "may be implemented in software, hardware, or a combination thereof. Preferably, as illustrated by way of the example in FIG. 3, the communication handler is implemented in software and stored in memory."

The claims for the '060 patent recite the use of computer storage or memory and implementation of function by computer. Claim 1 for the '060 patent describes:

> 1. A system for notifying users of impending arrivals of vehicles at particular locations, comprising: memory storing a first time value, said first time value indicating when a vehicle should be notified of an impending arrival of a vehicle; a clock configured to produce a second time value; a route handler configured to receive a status message from said vehicle and to transmit an update request when said vehicle is off schedule based on said status message; a schedule monitor configured to compare said first time value to said second time value and to produce and transmit a notification request based on the comparison of said time values, said vehicle schedule monitor further configured to update said first time value in response to said update request; and a communication handler configured to receive said notification request and to transmit a notification request.

Claim 8 claims, "the system of claim 1, wherein said vehicle monitor is implemented within a first computer system and said communication handler is implemented within a second computer system." The rest of the claims, namely, 4, 6, 9, 11, 13, 14, 16, 19, 20, and 22, all specify that information is "stored" in a "database."

Here, patents '781 or '060 do not meet the machine test of <u>Bilski</u>. The patentee of '781 even admits, at 10:30, that it does not require a machine and can be done by hand. Moreover, even in the computer-based mode of '781 the patentee says, at 6:51, it "can be implemented by any conventional computer. . . ." Since the '781 patent can both be

performed by hand and, in the automated mode, is not tied to any particular machine or computer, it comprises non-eligible subject matter.  Likewise, patent '060 does no more than specify general computers to implement various functions and computer memory to store results.  The '060 patent, at 4:20, "can be implemented in software, hardware, or a combination thereof."  This patent simply calls for a computer and computer memory to perform a variety of functions and does not "require the use of a 'particular' machine.'" The '060 patent also comprises non-eligible subject matter.

Nor do patents '781 or '060 meet the second prong of the machine-or-transformation test.  The transformation prong requires that the claim "transform[] an article into a different state or thing."  Bilski, 545 F. 3d at 962.  This transformation "must be central to the purpose of the claimed process."  Id.  But the main point of the transformation prong is that only certain types of "articles" are capable of being transformed.  Id.  The Bilski court said it is "virtually self-evident that a process for chemical or physical transformation of physical objects or substances is patent-eligible subject matter."  Id.  The Bilski court then went on to hold that "[p]urported transformations or manipulations simply of...abstractions cannot meet the test because they are not physical objects or substances and they are not representative of physical objects or substances."  Id. at 963.

Cases since Bilski have held that data gathering and electronic manipulation of data do not meet the transformation test of Bilski because the gathering and manipulation of data is not a transformation of an article into a different state or thing.  See, e.g., Accenture Global Services GMBH, 2010 U.S. Dist. Lexis at *2, 53 (software capable of performing tasks related to insurance transactions does not meet the transformation

prong); <u>Dealertrack v. Huber</u>, 657 F.Supp.2d 1152, 1153,1154 (C.D. Cal. July 7, 2009) (patentee "appear[ed] to concede that claims...[did] not meet the 'transformation' prong" where claim was a "computer-based credit application processing system [that] provides a graphical user interface, automatic software update downloading, lender to lender routing of credit applications, and integration with in-house finance and insurance systems and third party data entry facilities"). <u>Cf.</u> <u>In re Abele</u>, 684 F. 2d 902 (C.C.P.A. 1982)(holding that a claim providing for the electronic transformation of x-ray data, or data "clearly represent[ing] physical and tangible objects" into a particular visual depiction on a display was patentable).

Here, patent '781 claims (Claim 1) steps for monitoring travel data associated with a vehicle, comparing planned timing of the vehicle and then notifying users of updated vehicle arrival status information.  Patent '060 (Claim 1) provides for an automated computer-based method for monitoring travel of vehicles and for communicating messages to warn of impending arrivals.  Such information gathering and manipulation is not a transformation of an article into a different state or thing.  Neither patent meets the <u>Bilski</u> transformation prong.

Since both the '781 and '060 patents are invalid for lack of patentable subject matter under 35 U.S.C. § 101, no claim or suit for infringement can be brought on these patents.  Accordingly, the motion to dismiss for lack of patentable subject matter should be allowed.

## CONCLUSION

For the reasons stated above, the Amended Complaint fails to state a claim upon which relief can be granted.  Accordingly, the Amended Complaint should be dismissed with prejudice.

/s/ Eduardo A. Gonzalez
Adam M. Weisberger, BBO #646844
Michael C. Gilleran, BBO #192210
Eduardo A. González, BBO #658348
ADLER POLLOCK & SHEEHAN P.C.
aweisberger@apslaw.com
mgilleran@apslaw.com
egonzalez@apslaw.com
175 Federal Street, 10th Floor
Boston, MA  02110
Phone: (617) 482-'0600
Fax: (617) 482-'0604

Dated: May 19, 2010

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 19, 2010, I served a true copy of the within by electronic means (ECF) to the following:

William E. Hilton, Esq.
Matthew E. Connors
Gauthier & Connors LLP
225 Franklin Street, Suite 2300
Boston, MA  02110

/s/ Eduardo A. Gonzalez